UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD BUCKLEY,

                Plaintiff,

v.                                     CIVIL CASE NO. 04-60188
                                     HON. MARIANNE O. BATTANI

JO ANNE B. BARNHART,
Commissioner of Social Security,

                Defendant.

_____/

## OPINION AND ORDER OF THE COURT ADOPTING THE
## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.     INTRODUCTION**

       Plaintiff Richard Buckley brings this action under 42 U.S.C. § 405(g) challenging a

final decision of defendant Commissioner denying his application for Disability Insurance

Benefits ("DIB") under sections 216(I) and 223 of the Social Security Act.  On November 13,

2001, Plaintiff filed an application for DIB alleging an onset date of March 12, 2001 (Tr. 43).

Plaintiff alleges that he became disabled due to avascular necrosis (AVN) of the left ankle (Tr.

16).  He testified that on March 12, 2001, he discontinued his work as an assembler because his

ankle pain, which he described as "excruciating," prevented him from completing an eight-hour

shift (Tr. 131).  He stated that he had not worked since (Tr. 132).  After the initial denial of his

application on February 5, 2002, Plaintiff requested an administrative hearing (Tr. 29-32, 34).

On April 8, 2003, Administrative Law Judge ("ALJ") Earl A. Witten found that Plaintiff was not

disabled because although unable to perform his past relevant work, he could perform a

"significant range of sedentary work" (Tr. 23).  On July 14, 2004, the Appeals Council denied

review (Tr. 3-5). Plaintiff filed for judicial review of the final decision on August 30, 2004.

The case was referred to Magistrate Judge R. Steven Whalen pursuant to 28 U.S.C. § 636(b)(1)(B). The parties filed cross-motions for summary judgment. The Magistrate Judge issued a Report and Recommendation ("R&R") on August 24, 2005, recommending that Defendant's motion be denied and Plaintiff's motion be granted. Overall, the Magistrate Judge found that the ALJ's decision to deny DIB and SSI to Plaintiff was not supported by substantial evidence and that the ALJ did not properly assess Plaintiff's credibility.

On September 7, 2005, Defendant filed Objections to the R&R, raising two challenges: 1) the Magistrate Judge misapplied the Social Security Ruling 96-7p, 61 Fed. Reg. 34483 (July 2, 1996) in concluding that the ALJ's credibility assessment was not substantially supported by record evidence, and; 2) the Magistrate Judge erred in awarding benefits without remanding the case back to the ALJ.

For the reasons stated below, the Court adopts the Magistrate Judge's R&R in its entirety.

## II.     STANDARD OF REVIEW

A district court must conduct a *de novo* review of the parts of a magistrate judge's report and recommendation to which a party objects. 28 U.S.C. § 636(b)(1). The district "court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." Id. The requirement of *de novo* review "is a statutory recognition that Article III of the United States Constitution mandates that the judicial power of the United States be vested in judges with life tenure." United States v. Shami, 754 F.2d 670, 672 (6th Cir. 1985). Accordingly, Congress enacted 28 U.S.C. § 636(b)(1) to "insure[] that the district judge would

2

be

the final arbiter" of a matter referred to a magistrate judge.  Flournoy v. Marshall, 842 F.2d 875, 878 (6th Cir. 1987).

Judicial review in a social security appeal is limited to determining whether there is substantial evidence supporting the ALJ's decision and whether the judge applied the correct legal standards in reaching that decision.  Elam v. Comm'r of Soc. Sec., 348 F.3d 124,125 (6th Cir. 2003); 42 U.S.C. § 405(g).  Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  If substantial evidence supports a denial of benefits, that decision is not subject to reversal, even if the reviewing court determines that substantial evidence supports a contrary decision.  Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (en banc); Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

When determining whether the decision is supported by substantial evidence, the reviewing court must take into consideration the entire record, including "whatever in the record fairly detracts from its weight."  Mullen, 800 F.2d at 545 (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1971)).  However, the court may not review the evidence *de novo*, make determinations of credibility, or weigh the evidence.  Brainerd v. Sec'y of Health and Human Servs., 889 F.2d 679, 681 (6th Cir. 1989).  Consequently, the substantial evidence standard accords "considerable latitude to administrative decision makers," as "[i]t presupposes that there is a zone of choice within which the decision makers can go either way, without

3

interference by the courts." <u>Mullen</u>, 800 at 545 (citations and internal quotations omitted).


III.     ANALYSIS

        A.     The ALJ's Credibility Assessment.

        Defendant contends that the Magistrate Judge misapplied SSR 96-7p and the holding of

<u>Duncan v. Sec'y of Health and Human Servs.</u>, in concluding the ALJ's credibility assessment

was not substantially supported.  801 F.2d 847 (6th Cir. 1986).  The ALJ found that although

Plaintiff has some limitations from his impairment, his claimed symptoms and limitations were

not credible to the extent alleged or supported by the objective medical evidence.  In order to

determine if the ALJ's credibility assessment was supported by substantial evidence, the Court

must first examine the evidence presented, and the reasons the ALJ gave for not finding Plaintiff

fully credible.

        Plaintiff first complained of pain in his left ankle in March of 2000 during a medical

examination by Warren Taranow, D.O. (Tr. 93).  In June 2000, Dr. Taranow reviewed a

magnetic resonance imaging ("MRI") exam and diagnosed Plaintiff with avascular necrosis of

the talus (a region of cell death in the ankle bone) and tenosynovitis (inflammation of the tendon)

(Tr. 90).  Dr. Taranow prescribed an orthotic shoe insert and recommended that Plaintiff

consider changing his work and do a "sit down job" (Tr. 90).

        Plaintiff continued to complain of pain in his left ankle, and in August 2000, Dr. Taranow

prescribed a wheelchair and crutches, but recommended against surgical intervention at that time

(Tr. 87).  Dr. Taranow's March 2001 notes indicate that Plaintiff had continued to work in a

standing position for five hours a day (Tr. 85).  Dr. Taranow opined that regardless of the

4

outcome of treatment, Plaintiff would have to retrain for a "sit down type of job" (Tr. 85). In his

April 2001, treatment notes, Dr. Taranow observed limited range of motion in Plaintiff's ankle

and again opined that Plaintiff should avoid work that required him to bear weight on his ankle

(Tr. 84).

Plaintiff was seen in June and August 2001 by Susan Mosier-LaClair, M.D. ("Dr.

LaClair"), an orthopedic surgeon (Tr. 94-97). Dr. LaClair noted that Plaintiff's ankle pain was

caused by weight-bearing activities, and that it was significantly decreased by modification of

his activities to limit weight bearing activities (Tr. 94, 95). She stated that Plaintiff would "need

to be on permanent disability related to this condition . . ." (Tr. 94). She noted that Plaintiff did

not wear an ankle brace because he felt more comfortable without one, and that she had no

problem with this (Tr. 94). Dr. LaClair also gave Plaintiff a prescription of Darvocet for use

when his pain became severe (Tr. 94).

In January 2002, Dr. Gupta, a state agency medical consultant, reviewed Plaintiff's

medical file and opined that he retained the ability to occasionally lift ten pounds, frequently lift

less than ten pounds, stand and/or walk for up to two hours in an eight-hour workday, sit for six

hours, with limited pushing and pulling in the lower extremities (Tr. 99). Dr. Gupta also

placed numerous other restrictions on Plaintiff's range of motion and found Plaintiff's

description of his abilities to be consistent with his actual restrictions in standing, walking, and

lifting (Tr. 100). Dr. Gupta also found him to be credible (Tr. 103).

Plaintiff was again seen by Dr. LaClair in January 2002. She indicated that he was doing

"fairly well" and recommended against surgery at that time (Tr. 125). She noted that Plaintiff's

5

complaints were much reduced after he modified his activities, and that he was walking in a regular shoe, and using a cane to ambulate (Tr. 125).

In an August 2002, visit to Dr. LaClair, she noted that Plaintiff was "doing fairly well overall" and that he could "get by" using anti-inflammatory medication and occasional use of Darvocet (Tr. 124). She observed that Plaintiff was "feeling much better" after modifying his activities, and had come the appointment wearing a regular shoe and without use of an ambulatory aid (Tr. 124).

Plaintiff testified that on March 12, 2001, he discontinued his work as an assembler because his ankle pain was "excruciating," and prevented him from completing an eight-hour shift (Tr. 131). Plaintiff reported that since he stopped work, his ankle condition improved due to his avoidance of standing and walking (Tr. 132). He reported that when he was obliged to stand or walk for more than two hours a day, his ankle became swollen and stiff, stating that he experienced pain if he attempted to stand or walk for more than twenty minutes (Tr. 132, 135). He stated that after his ankle became swollen, the inflamation sometimes lasted for several days (Tr. 132). Plaintiff stated that his limited mobility prevented him for pursuing crafts or social activities, but acknowledged that he could grocery shop for short periods (Tr. 134). He indicated that he did not perform yard work, but completed minor household chores and helped his wife make dinner, while sitting on a stool, on a regular basis (Tr. 135). He reported that he slept restlessly, due to pressure from the blankets on his ankle (Tr. 136). He stated that he experienced pain if he had to sit for any length of time, adding that his need to adjust his ankle's position created calf, thigh, and sciatic pain (Tr. 137). Plaintiff estimated that he could remain

6

standing for up to an hour, but could not walk for more than four blocks without experiencing discomfort (Tr. 137). He reported that his most comfortable position was sitting with his left leg elevated at hip level (Tr. 138). He testified that his physician had prescribed a cane, which relieved the pressure on his ankle, but when he experienced more intense discomfort, he used an air cast on his ankle for several days (Tr. 139). He reported difficulty bending and squatting (Tr. 140). Plaintiff testified that he retained a driver's license, but drove only short distances (Tr. 140).

The ALJ found that "[a]lthough [Plaintiff] has some limitations from his impairment, his symptoms and limitations are not credible to the extent alleged, nor supported by the objective evidence of record" (Tr. 19). The ALJ cited a number of inconsistencies in Plaintiff's description of his limitations and symptoms, including: "relatively infrequent" visits to his physician for his "allegedly disabling symptoms" (Tr. 19); Plaintiff's conservative and irregular use of medication; in August, 2002, Plaintiff appeared at his Doctor's office with a regular shoe and did not use a cane or any other assistive device (Tr. 19); despite the existence of a severe ankle impairment, no physician of record recommended that Plaintiff elevate his feet to alleviate pain or swelling; Plaintiff's testimony that he was able to care for his personal needs, go grocery shopping, prepare meals, and do some housework belied his claim that he was rendered immobile by his need to elevate his foot 50-60% of the time; Plaintiff bought a hunting license, although he did not get a chance to use it (TR 19), and finally; even though Dr. LaClair stated Plaintiff was "disabled," it was not clear that Dr. LaClair "was familiar with the definition of 'disability' contained in the Social Security Act . . ." (TR 20).

"It is for the Secretary, not a reviewing court, to make credibility findings." Felisky v.

7

Bowen, 35 F.3d 1027, 1036 (6th Cir. 1994).  However, "[i]f an ALJ rejects testimony as incredible, he must clearly state his reasons for doing so."  Id.  When determining whether the decision is supported by substantial evidence, the reviewing court must take into consideration

the entire record, including "whatever in the record fairly detracts from its weight."  Mullen, 800 F.2d at 545.

The Magistrate Judge determined the ALJ did not properly assess Plaintiff's credibility because he improperly discounted Plaintiff's claim that he needed to keep his foot elevated at hip level.  In rejecting Plaintiff's credibility, the ALJ noted that the "objective medical evidence does not provide a basis for finding limitations greater than those determined in this decision" (Tr. 20).  20 C.F.R. § 404.1529(c)(3) lists the factors to be considered in making a credibility determination, including daily activities, precipitating and aggravating factors, treatment received for relief of symptoms, and additional considerations relevant to functional limitations. The Magistrate Judge found that Plaintiff's claim should be assessed as a pain-related symptom, and looked to 20 C.F.R. § 404.1529, as a guide to determine if the ALJ properly assessed Plaintiff's claims.  One of the factors to be weighed under § 404.1529 include the consideration of objective medical evidence, however, the Commissioner cannot "reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."  20 C.F.R. §404.1529(c)(2).  Likewise, the Sixth Circuit has held that a claimant is required to provide "objective medical evidence of an underlying medical condition," but the claimant is not required to present "'objective evidence of the pain itself.'"

8

Duncan, 801 F.2d at 853 (quoting Green v. Schweiker, 749 F.2d 1066, 1071 (3d Cir. 1984). See also Carradine v. Barnhart, 360 F.3d 751, 753 (7th Cir. 2004) ("[O]nce the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence") (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996)). Thus, although both the SSA regulations and case law "require objective medical evidence showing an underlying medical condition," there is no requirement that the subjective symptoms, including additional considerations relevant to functional limitations, need to be established by objective medical evidence. Felisky, 35 F.3d at 1039. It is uncontested that Plaintiff has established a severe medical condition, and none of Plaintiff's examining physicians, including Dr. Gupta, held the opinion that Plaintiff was a malingerer. Thus, the only question is whether the ALJ properly rejected Plaintiff's testimony regarding the need to elevate his ankle.

The Magistrate Judge tested the bases for the ALJ's findings against Sixth Circuit precedence. An ALJ may award or deny a claimant disability benefits based on whether: (1) the objective medical evidence confirms the severity of the alleged pain, or (2) the objectively established medical condition "is of such a severity that it can reasonably be expected to produce the alleged disabling pain." Duncan, 801 F.2d at 853. Looking at part two of the Duncan test, the Magistrate Judge found that even though there is no specific medical or clinical evidence directly supporting Plaintiff's alleged need to keep his foot elevated during a good portion of the day, there is a wealth of medical evidence and medical opinions that show Plaintiff's condition could "reasonably be expected to produce the alleged disabling pain," that Plaintiff alleviated by keeping the foot elevated. The Magistrate Judge looked to the medical record to determine the

9

severity of Plaintiff's condition.  Dr. Taranow not only found the appearance of Plaintiff's foot

"troubling" (Tr. 93), but stated that he was "shocked by the severity of the pathology," and

indicated that he intended to consult with other specialists at a conference in New York City (Tr.

90). Significantly, Dr. Taranow stated:

> Mr. Buckley continues to be severely disabled by his left ankle and hindfoot pain.
> His injection helped him for some time but the pain has recurred.  He is having
> trouble at work. I think the biggest problem is the fact that he has severe
> pathology without significant objective signs that can be seen by the untrained
> eye.  I get the impression that his bosses and fellow employees think he is
> malingering when this is obviously not the case.

(Tr. 87).  Dr. LaClair, concurred in Dr. Taranow's diagnosis, and stated, "[D]ue to the almost

complete AVN (avascular necrosis) of the talus, that it significantly limits his options for relief

of his arthritis pain" (Tr. 96).  While both Dr. Taranow and Dr. Gupta recommended "sit down"

type work, which would alleviate some of the obvious pain caused by putting weight on the foot,

they did not specifically discuss Plaintiff's "self-help" remedy of elevating the foot above hip

level.  However, the ALJ should not have rejected Plaintiff's subjective symptoms, and other

considerations relevant to functional limitations, solely because no doctor ordered Plaintiff to

elevate his foot at hip level to alleviate the pain and swelling.

   In addition, the ALJ misconstrued Plaintiff's testimony "by taking it out of context."

Felisky, 35 F.3d at 1036; see also Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531 (6th Cir.

1997).  The ALJ cited Plaintiff's relatively infrequent visits to the doctor and his conservative

and irregular use of medication to establish that Plaintiff's condition was not disabling.  Plaintiff

had a definitive diagnosis as of June 2000, and there was no medical procedure that could

alleviate the pain (TR 133).  Frequent doctor visits would do nothing to alleviate or treat

Plaintiff's debilitating pain.  Further, Plaintiff used prescribed medication daily, as well as

narcotic painkillers when the pain became severe.

Other portions of the decision unjustifiably discount Plaintiff's credibility.  While the "substantial evidence" standard which this Court employs is deferential to the ALJ's findings, the record must be viewed as a whole.  "A substantiality of evidence evaluation does not permit a selective reading of the record."  <u>Davis v. Apfel</u>, 133 F. Supp.2d 542, 547 (E.D. Mich. 2001).  <u>See also</u> <u>Cotter v. Harris</u>, 642 F.2d 700, 706 (3rd Cir. 1981) ("'Substantial evidence' can only be considered as supporting evidence in relationship to all the other evidence in the record"); <u>Kent v. Schweiker</u>, 710 F.2d 110, 114 (3rd Cir. 1983) ("Nor is evidence substantial if it is overwhelmed by other evidence...").  In order to support the holding that Plaintiff is credible only to the extent that he is not totally disabled, the ALJ cites Plaintiff's testimony: that he bought a hunting license the year before the hearing as proof nondisability, although he did not use it (Tr. 19, 151), and; that he was able to care for his personal needs, go grocery shopping, prepare meals, and do some housework.  None of these factors constitutes substantial evidence that Plaintiff's claims lack credibility to the extent alleged.  This Court concurs in the Magistrate Judge's finding that the record in this case, viewed as a whole, supports Plaintiff's testimony that he needs to keep his leg elevated, and that there is no substantial evidence to the contrary.

**B.     The Magistrate Judge's Award of Benefits**

The Magistrate Judge found that benefits should be awarded because no factual issues in the case remained unresolved and the proof of disability was strong with no significant evidence to the contrary.  The Vocational Expert ("VE") in this case testified that if Plaintiff's testimony was considered fully credible, there would be no gainful employment he could perform (Tr. 157-58).  Therefore, this case falls within the ambit of <u>Felisky</u>, where the Court stated:

11

> Our review of the entire record reveals that it is devoid of substantial evidence to support the ALJ's decision to discount [Plaintiff's] credibility. The VE testified that, if [Plaintiff's] testimony were believed, [Plaintiff] is completely disabled. We therefore must find that the Secretary did not carry his burden of showing that Plaintiff possesses the residual functional capacity to perform substantial gainful activity.

Felisky, 35 F.3d at 1041. The Sixth Circuit has also held that it is appropriate to remand for an award of benefits when "all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." Newkirk v. Shalala, 25 F.3d 316, 318 (6th Cir. 1994); see also Faucher, 17 F.3d at 176. This entitlement is established if "the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking. Faucher, 17 F.3d at 176 (citing Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985)). This Court concurs with the Magistrate Judge's findings that the record viewed as a whole, fully supports Plaintiff's claims, and there is no substantial evidence to the contrary.

## IV.    CONCLUSION

For the reasons stated above, the Court **ADOPTS** the Magistrate Judge's R&R in its entirety. Accordingly, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment is **GRANTED** and Defendant's Motion for Summary Judgment is **DENIED**. The Case will be **REMANDED** for an award of benefits.

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

DATED: September 20, 2005

12

**CERTIFICATE OF SERVICE**

Copies of this Order were served upon  James A. Branson and Mikel E. Lupisella on this

date by ordinary mail and/or electronic filing.

                                        s/Bernadette M. Thebolt_____
                                        DEPUTY CLERK

13